## EVANS v. BRACKEN.

No. 9527—Opinion Filed Jan. 20, 1920.

Rehearing Denied March 2, 1920.

(Syllabus by the Court.)

### Indians—Lease of Land—Validity.

A contract or lease executed by a Cheyenne Indian on lands allotted to him under the act of Congress of March 3, 1891 (26 Stat. L. 1024), that is not in substantial compliance with the rules and regulations of the Department of the Interior, is null and void, and a defense to an action in ejectment cannot be predicated thereon.

Error from District Court, Kingfisher County; J. C Robberts, Judge.

Action by A. E. Bracken against A. H. Evans. Judgment for plaintiff, and defendant brings error. Affirmed.

D. K. Cunningham, for plaintiff in error.
John T. Bradley, for defendant in error.

RAINEY, J. Christian Starr, a Cheyenne Indian, received an allotment of land under the act of Congress of March 3, 1891. On December 4, 1915 the United States issued a patent to him, but prior to this time, by virtue of the law under which the land was allotted and patented, it was held in trust for Christian Starr, the allottee, by the United States. Subsequent to the issuance of patent, and on February 16, 1916, Christian Starr and Twin Woman, his wife, sold and conveyed the land to A. E. Bracken. One A. H. Evans was in possession of the land at said time, and Bracken commenced this action for possession and damages for unlawfully withholding possession. Evans claimed the right to possession of the land under the following instruments: First, a lease from Christian Starr to George M. King, dated November 20, 1912, and assigned by King to Evans on April 20, 1913; second, a contract dated September 5, 1914, which recited

that, according to the terms of the lease entered into by Starr and King (subsequently assigned to Evans), it was agreed that King was to break 35 acres of sod and to put ten acres in alfalfa as a part of the consideration for the leasing of the premises, and that in consideration of $15 cash the lessor relieved Evans of the fulfillment of the terms of said original lease; third, a purported contract dated February 11, 1916, (which was never recorded) providing that in consideration of $50 cash paid by Evans to Starr the former should be permitted to keep the premises "as under the old contract made with George M. King," without Evans breaking any more land on the place or sowing any alfalfa, and it was further agreed that Evans should have the right to remove any improvements or fences that he had placed on the land purchased from G. M. King.

At the trial the court held that the construction of the leases was a question of law, and instructed the jury to find the amount of plaintiff's damages, which it did at $80. The court thereupon decided, in effect, that the leases were void, and entered judgment on the verdict for the plaintiff, from which the defendant, Evans, has appealed.

The land was allotted pursuant to the act of Congress of March 3, 1891 (26 Stat. L. 1024), sec. 13, art. 6 of which provides:

"When said allotments of lands shall have been selected and taken as aforesaid, and approved by the Secretary of the Interior, the title thereto shall be held in trust for the allottees, respectively, for the period of 25 years, in the manner and to the extent provided for in the act of Congress entitled: 'An act to provide for the allotment of land in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the territories over the Indians; and for other purposes,' approved February eight, eighteen hundred and eighty-seven: and at the expiration of said period of 25 years the titles thereto shall be conveyed in fee simple to the allottees, or their heirs, free from all incumbrances."

Under section 5 of the act of February 8, 1887 (24 Stat. L. 389), it is provided that at the expiration of the trust period the United States will convey the land to the Indian allottee, or his heirs, "in fee, discharged of said trust and free of all charge or incumbrance whatsoever," and that, "if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

On September 19, 1910, the Department of the Interior adopted rules and regulations for the leasing of Indian lands on reservations where allotted lands were held under trust patents. These regulations permitted certain Indian allottees, who should be deemed by the superintendent in charge of any competency commission to have the requisite knowledge, experience, and business capacity to negotiate lease contracts, to lease their own lands under certain conditions. These regulations prohibited the leasing of homesteads, the making of overlapping leases within a period greater than seven months before the expiration of any existing lease, and provided for the making of such leases in quadruplicate, and their filing in the office of the superintendent in charge of the reservation within 30 days after execution for his examination. If the examination disclosed that the lease conformed to the law and the rules and regulations prescribed, the superintendent, or other persons in charge, indicated his approval thereof on the lease. These regulations appear to have been in force until July 1, 1916, when additional regulations were prescribed. These permits were subject to revocation at any time. These rules and regulations were the only lawful authority entitling Christian Starr to lease his land, and the lease made by Starr to King on November 20, 1912, was void, since it was an overlapping lease, was not made in quadruplicate, was not filed with the Indian superintendent, nor approved by him, and purported to lease 40 acres required by such rules to be reserved as a homestead and farmed and worked by the Indian. Williams et al. v. Steinmetz et al., 16 Okla. 104, 82 Pac. 986.

It is contended, however, that under a letter written April 29, 1908, Christian Starr was permitted to make the lease in controversy. This contention is without merit, both for the reason that the lease does not comply with the rules mentioned in the letter, and because this permission was superseded by the regulations subsequently made. The purported contract of September 5, 1914, is void for the same reasons as is the lease of November 20, 1912. The purported contract of February 11, 1916, is also void, for the reason that it is a part of and attempts to breathe life into the void lease of November 20, 1912

In consideration of the foregoing facts it conclusively appears that the trial court was right in holding that the plaintiff was entitled to recover, and the judgment is therefore affirmed.

OWEN, C. J., and KANE, JOHNSON, and McNEILL, JJ., concur.